1
2
3
4
5
6
7

8            **UNITED STATES DISTRICT COURT**

9            **EASTERN DISTRICT OF CALIFORNIA**

10

11   ALBERT GARCIA,                    )   Case No.: 1:20-cv-00304-NONE-JLT (HC)
                                        )
12            Petitioner,              )   FINDINGS AND RECOMMENDATION TO
                                        )   DENY PETITION FOR WRIT OF HABEAS
13   v.                                 )   CORPUS
                                        )
14   RALPH DIAZ,                        )   [THIRTY-DAY OBJECTION DEADLINE]
                                        )
15            Respondent.              )
                                        )
16   _____ )

17            Petitioner is currently serving a sentence of twenty-four years to life in prison after a jury

18   found him guilty of attempted murder, assault with a deadly weapon, and found true related gang

19   enhancements. He filed the instant habeas petition challenging the conviction and sentence. As

20   discussed below, the Court finds the claims to be without merit and recommends the petition be

21   **DENIED**.

22   **I.      PROCEDURAL HISTORY**

23            Petitioner was charged with attempted murder (Pen. Code §§ 664/187, subd. (a); count 1)

24   committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22,

25   subds. (b)(1)(C) & (b)(5)); and assault with a deadly weapon (§ 245, subd. (a)(1); count 2) committed

26   for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd.

27   (b)(1)(B)); and street terrorism (§ 186.22, subd. (a); count 3.) People v. Garcia, No. F073921, 2019

28   Cal. App. Unpub. LEXIS 466, at *1 (Jan. 22, 2019).

1

A jury convicted Petitioner on all counts and found the gang allegations true. Id. On count 1, the court sentenced Petitioner to life with the possibility of parole, with minimum parole eligibility of 15 years (§ 186.22, subd. (b)(5).) Id. On count 2, the court sentenced Petitioner to an aggravated term of four years, plus five years for the gang enhancement, stayed pursuant to section 654. (§ 186.22, subd., (b)(1)(B).) Id. at *1-2. On count 3, the court sentenced Petitioner to an aggravated term of three years, stayed pursuant to section 654. Id. at *2.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA affirmed the judgment. Id. Petitioner filed a petition for review in the California Supreme Court, which was denied on April 10, 2019. People v. Garcia, No. S254323, 2019 Cal. LEXIS 2533 (Apr. 10, 2019). Petitioner filed the instant habeas petition on February 28, 2020. (Doc. 1.) Respondent filed its answer on May 11, 2020. (Doc. 11.) Petitioner filed a traverse on September 23, 2020. (Doc. 17.)

## II.   FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

On the evening of April 28, 2015, Jose A. [FN. 4] went to an alley in Porterville to meet up with a friend named "Beto." Jose planned to give Beto a ride to get something to eat.

> [FN. 4]: To further personal privacy interests, we will refer to the victim and witnesses by first name and last initial. (Cal. Rules of Court, rule 8.90(b) & (b)(10).)

Jose stopped his truck in the alley. Some distance away, he saw "a lot of people" at what appeared to be a party. However, Jose did not see Beto. Jose initially testified that he got out of his truck and smoked a joint for about 20 minutes, but before he finished the joint, he was attacked by "like ten" people.

In subsequent testimony, and in interviews with law enforcement in the hours and days after the incident, Jose said he went *inside* the nearby residence of someone named Megan D., planning to pick up Beto there and "smoke a joint." A "chubby dude" came inside and said to Jose: "'Hey, can I talk to you real quick?'" Jose went outside where defendant and over a dozen others were there standing in a "bunch." They surrounded Jose and assaulted him. He was stabbed nine or 10 times during the assault by an unidentified teenager wearing a red shirt.

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will adopt the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

Jose somehow got to his brother's front porch, where he was found bleeding from stab wounds, drifting in and out of consciousness. Responding Porterville Police Officer Vargas asked Jose where the incident had occurred, and Jose directed him towards Tomah Avenue just east of Prospect Avenue. Vargas traveled that direction and saw a trail of blood. Near the blood trail, Vargas found a Ford F-150 with an open door and shattered window. Found inside the F-150 were three baggies of a substance that tested presumptively positive for methamphetamine.

*Post-incident Interviews with Jose*

Detective Tashiro responded to the hospital where Jose was taken. Jose was in critical but stable condition. Jose was loopy, in a lot of pain, and was reluctant to talk at first. Eventually, Jose identified two of his attackers: "Elijah" and someone with the moniker "B-rad."

Jose said that B-rad had confronted him over being a gang dropout. B-rad asked Jose if he remembered him. After Jose said he did remember, a group of 15 to 20 people attacked him. Several of them were punching him, and one person stabbed him. Elijah was telling people to attack Jose.

On the next day, Detective Tashiro spoke with Jose again. Jose appeared to be in a lot less pain and said he was doing better. Jose picked Elijah Perez out of a lineup.

Jose also provided a description of B-rad: a bald, white "regular dorky, chunky" 30-year-old, [FN. 5] who does not look like a gangster but was actually "[k]ind of" an "OG." [FN. 6] Later that day, Detective Tashiro showed Jose a picture of defendant and Jose said, "'That's B-rad.'"

> [FN. 5]: Jose was 31 at the time, and he estimated B-rad was a year or two younger than him. Defendant is about six and a half or seven years younger than Jose.

> [FN. 6]: OG is a term used by gang members to describe someone who is "old school" or has been in the gang for a long time or was involved in the original development of the gang.

Jose also gave additional details about the attack. The person who stabbed him was a "youngster" (15 or 16 years old) wearing a red shirt. The assailants yelled out, "'West Side,'" during the attack. Defendant and Elijah Perez were the "main one[s]" involved in the attack. Perez told everyone, "'Stop him, stop him,'" when Jose took off running. Defendant and Perez were both hitting Jose during the attack.

*Law Enforcement Investigation*

Law enforcement searched the home where defendant was living. Defendant stored his items in a closet in the southeastern bedroom of the residence. He had red clothing in the closet and "little, if any, blue clothing ...." Defendant himself had several tattoos,

3

including a "T" on one arm and a "C" on the other. Detective Hatch testified that the tattoos "form the abbreviation of T and C, and based on my previous experience dealing with Northern gang members they often have T.C. to denote their loyalty and affiliation with the Tulare County Northern gang clique."

Detective Hatch looked for signs defendant had been in an altercation and found a circular red mark on the back of his scalp approximately three inches in diameter.

Detective Tashiro tried to contact Megan D., who lived at the home outside of which the stabbing occurred. Megan said she was willing to cooperate but did not want to talk to law enforcement where gang members might be watching. They made arrangements to speak with Megan at a safe location nearby. However, Megan never showed up. After three to four months, an investigator with the district attorney's office was able to contact her. She was scared and did not want to testify. The investigator had to arrest her and bring her to court.

The investigator also had difficulty locating Jose. The investigator had to arrest Jose and bring him into court on a body attachment. At trial, Jose said he did not remember talking to a peace officer after the attack, did not remember someone asking to speak with him outside, did not remember identifying Elijah as being involved in the attack, and did not remember the name "B-rad" at all.

*Gang Expert*

Porterville Police Detective Kirk testified that the two primary gangs in Porterville are the Norteños (i.e., Northerners) and the Sureños (i.e., Southerners). There are three Norteño subsets in Porterville: the East Side Poros (i.e., the East Side Varios Poros, or "ESP," or "ESVP"); the Varios Centro Poros (i.e., "VCP"); and the West Side Poros (i.e., "WSP").

Predicate Offenses

The prosecutor asked Detective Kirk if he had "researched" specific crimes committed by Norteño gang members in preparation for the present case. Kirk responded that he had. First, Kirk described a robbery committed in June 2009:

"Several known and identified Northern gang members, Josue Sanchez and Roman Hernandez, contacted an individual in front of Galaxy 9 Theater here in Porterville and asked him what he had, what he had [sic] for them and while Sanchez pointed a revolver in his face, Sanchez and another gang member then began to assault the individual. [¶] Sanchez hit the individual in the face with a revolver and eventually they took the individual's wallet and then fled the area in the vehicle. They were later contacted and found to be in possession of the victim's property and arrested for that case. [¶] During Hernandez's Mirandized interview in regards to that case, he had said that this was his first day as a Norteno gang member and basically they were out on a crime spree to celebrate his first day as a Norteno ...."

Later, the prosecutor asked whether, in the course of Detective Kirk's "preparation for this case," he "uncover[ed]" another predicate crime by a Norteño. Kirk described the second predicate offense as follows:

"[I]n April of 2011, three individuals were seated in their vehicle at Murry Park when they were approached by between ten and 12 Norteno gang members. [¶] They ordered them, the three individuals, out of the vehicle and to lay face down on the ground. The three individuals did it out of fear due to being outnumbered. The Norteno gang members then took the individuals's [sic] wallets and began physically assaulting all three of them. [¶] One of the individuals was severely stabbed during the assault. The Norteno gang members ... were in the party in the area and while doing so were yelling 'Norte,' and three of the Norteno gang members were later caught and taken into custody ...."

A man named Pedro Ayon was convicted in connection with the 2011 offense.

Norteño Dropouts

Detective Kirk testified that one of the rules for the Norteño gang is that once you are a member of the gang, you must remain a member for life. Dropping out of the gang is "completely unacceptable." If a Norteño sees a dropout "on the streets," the Norteño "would be expected to commit some sort of assault on that individual or maybe gather intel on what they are doing, something to benefit the Norteno gang and punish that individual in some way."

Defendant

Detective Kirk opined that defendant is an active Northern gang member. Kirk testified that defendant met six criteria of active Norteño gang membership: (1) he is a self-admitted Norteño gang member; (2) he has been contacted at known Norteño gang hangout sites; (3) he has been contacted wearing Northern gang-related attire; (4) he has been contacted with numerous Norteño gang associates; (5) he has Norteño-associated tattoos; and (6) he has been arrested for crimes consistent with gang activity. [FN. 7]

> [FN. 7]: Additional gang testimony is described in connection with issue V in the Discussion section of this opinion.

People v. Garcia, No. F073921, 2019 Cal. App. Unpub. LEXIS 466, at *2-8 (Jan. 22, 2019).

## III.   DISCUSSION

### A.   Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.

7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

B.     Legal Standard of Review

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003); Williams, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (citing Williams, 529 U.S. at 405-406).

In Harrington v. Richter, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Cullen v. Pinholster, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of

6

1   fairminded disagreement." Harrington, 562 U.S. at 103.

2       The second prong pertains to state court decisions based on factual findings. Davis v.

3   Woodford, 384 F.3d 628, 637 (9th Cir. 2003) (citing Miller-El v. Cockrell, 537 U.S. 322 (2003)).

4   Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the

5   petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts

6   in light of the evidence presented in the State court proceeding." Wiggins v. Smith, 539 U.S. 510, 520

7   (2003); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is

8   unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists."

9   Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*,

10  Maddox v. Taylor, 543 U.S. 1038 (2004).

11      To determine whether habeas relief is available under § 2254(d), the federal court looks to the

12  last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker,

13  501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we

14  independently review the record, we still defer to the state court's ultimate decisions." Pirtle v.

15  Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

16      The prejudicial impact of any constitutional error is assessed by asking whether the error had

17  "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v.

18  Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding

19  that the Brecht standard applies whether or not the state court recognized the error and reviewed it for

20  harmlessness).

21      C.    Review of Petition

22      The petition presents the following claims for relief: (1) The evidence was insufficient to

23  support the jury finding that he intended to kill the victim; (2) That the prosecutor committed

24  misconduct by introducing facts not in evidence and appealing to the jurors' passion; (3) That the trial

25  court abused its discretion by denying his motion for mistrial; (4) That much of the gang expert

26  testimony violated Petitioner's right to confrontation under People v. Sanchez, 63 Cal. 4th 665 (2016);

27  and (5) That he was prejudiced by the admission of his responses to jail booking records at trial, and

28  that counsel was ineffective for failing to object to the admission of the booking records.

7

1.    <u>Sufficiency of the Evidence</u>

Petitioner contends that there was insufficient evidence to support the jury finding that he intended to kill the victim. (Doc. 1 at 5-7.) Petitioner raised this claim on direct review in the state courts. In the last reasoned decision, the appellate court denied the claim as follows:

Defendant argues there was insufficient evidence that he personally intended to kill Jose.

*A. Law*

"In addressing a claim of insufficient evidence to support a conviction, this court '"reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt."' [Citation.] 'We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 345, 205 Cal. Rptr. 3d 386, 376 P.3d 528.)

Intent to kill may be proved by circumstantial evidence. (*People v. Morton* (1947) 79 Cal.App.2d 828, 843-844, 181 P.2d 32.) Indeed, because there is rarely direct evidence of a defendant's intent, it is usually shown by the circumstances. (See *People v. Vu* (2006) 143 Cal.App.4th 1009, 1025, 49 Cal. Rptr. 3d 765.)

*B. Analysis*

The record reveals evidence supporting the inferences described below. Defendant was an "OG," or longstanding Northern gang member. Jose had dropped out of a Northern gang. [FN. 8] Gang members sometimes commit assaults, attempted murders and murders against drop outs.

> [FN. 8]: Jose had been an "eastsider" in a Northern gang. Defendant may have been a "westsider" in a Northern gang.

Someone asked Jose to come outside where defendant and the other assailants were standing in a "bunch." Defendant confronted Jose about being a "rat," and then 15 to 20 people began attacking Jose. Defendant joined the others in hitting Jose. [FN. 9] One of the younger assailants stabbed Jose nine or 10 times. When Jose ran away, Perez yelled, "'Stop him, stop him.'"

> [FN. 9]: This evidence defeats defendant's claim that there was no evidence he facilitated or "participated in the assault."

Jose told law enforcement that the attack happened "because of" defendant. "It happened because he was the one that told them about me." The assailants thought Jose had "ratted on them a while back ...."

The jury could have accepted a reasonable chain of inferences to conclude defendant intended for Jose to die. First — the evidence that Jose was brought outside to a group of individuals standing in a "bunch" and was then quickly assaulted — gives rise to an inference the assault was planned, even if only shortly beforehand. Second — defendant's stature in the gang, the relative youth of the other participants, and Jose's testimony that the attack happened "because of" what defendant told the other assailants — gives rise to the inference that any planning by the group was led by, or at least acquiesced to, by defendant. Third — the fact that the group thought Jose was a "rat," that Jose was stabbed multiple times, and that Perez tried to stop Jose from escaping — gives rise to the inference that the plan was to kill Jose rather than merely assault or injure him. These conclusions, which are reasonable and supported by evidence, support a finding that defendant personally intended for Jose to die. As a result, we reject defendant's challenge.

People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *8-11.

      a.    *Legal Standard*

The law on sufficiency of the evidence is clearly established by the United States Supreme Court. Pursuant to the United States Supreme Court's holding in Jackson v. Virginia, 443 U.S. 307 (1979), the test on habeas review to determine whether a factual finding is fairly supported by the record is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319; see also Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995).

After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson

with an additional layer of deference. <u>Juan H. v. Allen</u>, 408 F.3d 1262, 1274 (9th Cir. 2005).  In applying the AEDPA's deferential standard of review, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 459 (1986).

In <u>Cavazos v. Smith</u>, 565 U.S. 1 (2011), the United States Supreme Court further explained the highly deferential standard of review in habeas proceedings, by noting that <u>Jackson,</u>

> makes clear that it is the responsibility of the jury - not the court - to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was "objectively unreasonable."

> Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold.

<u>Id</u>. at 2.

### b.   Analysis

Viewing the evidence in the light most favorable to the prosecution, it is clear that the state court's determination that there was sufficient evidence was not unreasonable. As noted by the state court, the evidence that Jose was brought outside to a group of individuals standing in a "bunch" and was then quickly assaulted gives rise to an inference the assault was planned, even if only shortly beforehand. <u>People v. Garcia</u>, 2019 Cal. App. Unpub. LEXIS 466, at *10. Additionally, the Fifth DCA states that Petitioner's stature in the gang, the relative youth of the other participants, and Jose's testimony that the attack happened "because of" what Petitioner told the other assailants gives rise to the inference that any planning by the group was led by, or at least acquiesced to, by Petitioner. <u>Id</u>. at *10-11. Lastly, the Fifth DCA describes that the fact that the group thought Jose was a "rat," that Jose was stabbed multiple times, and that Perez tried to stop Jose from escaping gives rise to the inference that the plan was to kill Jose rather than merely assault or injure him. <u>Id</u>. at 11. The Fifth DCA reasonably concluded that these conclusions, which are reasonable and supported by evidence, support a finding that Petitioner personally intended for Jose to die. <u>Id</u>.

Petitioner fails to show that no fairminded jurist would agree with the state court's

10

determination. Petitioner fails to demonstrate that the state court rejection of his claim was contrary to, or an unreasonable application of, the <u>Jackson</u> standard, and the claim should be denied.

### 2.   Prosecutorial Misconduct

Petitioner next alleges prosecutorial misconduct. Petitioner argues that the prosecutor committed misconduct by (1) introducing facts not in evidence by arguing during closing summation that a non-testifying witness had identified Petitioner as one of the attackers, and (2) appealing to the jurors' passion by arguing it was the jurors' job to stop gangs. (Doc. 1 at 8-11.) Petitioner raised these claims on direct appeal, and the Fifth DCA denied the claims.

#### a.   *Legal Standard*

A petitioner is entitled to habeas corpus relief if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." <u>Greer v. Miller</u>, 485 U.S. 756, 765 (1987) (quoting <u>United States v. Bagley</u>, 473 U.S. 667 (1985)). Any claim of prosecutorial misconduct must be reviewed within the context of the entire trial. <u>Id</u>. at 765-66; <u>United States v. Weitzenhoff</u>, 35 F.3d 1275, 1291 (9th Cir. 1994). The Court must keep in mind that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor" and "the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982). If prosecutorial misconduct is established, and it was constitutional error, the error must be evaluated pursuant to the harmless error test set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). <u>See</u> <u>Thompson</u>, 74 F.3d at 1577 (Only if constitutional error is established "would we have to decide whether the constitutional error was harmless.").

#### b.   *Analysis – Introducing facts not in evidence*

In the last reasoned decision, the Fifth DCA denied this claim as follows:

Defendant claims the prosecutor introduced facts outside the record in closing summation.

*A. Background*

Christina D. testified that in April 2015 she lived in a trailer on Tomah Avenue in Porterville. Christina's boyfriend, Gerald S., also lived in the trailer. At trial, Christina claimed she did not remember "anything" from the date of the incident. However, she admitted that she told Detective Ward that she was at Megan's house when a tall, "chunky Mexican" with "short hair" arrived. She testified this individual was the same person depicted in Exhibit 10, which was a picture of Jose. Megan testified that Jose then went to speak with Gerald outside. Jose was then surrounded by a "bunch of people."

Genaro Pinon, an investigator with the district attorney's office, testified that he searched for Gerald for three months and could not locate him.

During closing summation, the prosecutor said:

"There's really a river of fear that's been seeping through this entire case. Every one of the witnesses has been affected by it. Each civilian witness that we brought up has been either unwilling to repeat their statement about the gang, unwilling to repeat the statements that they had, unwilling to come forward and testify.

"You can certainly see visibly Megan [D.], how she was shaking while making the identification. You could see that Christina [D.] got shaken up and started almost crying when I was trying to go into the details about what she remembers. There was real fear here and the fear goes to another thing which is the believability of witnesses, and the believability of what they saw.

"None of the witnesses have a motive that has been discussed, mentioned or thought of for why they would want to pick out Elijah Perez and Albert Garcia as the people involved. None of them has anything to gain."

The prosecutor later argued that it was not in Jose's interest to identify the defendants either. The following exchange then occurred:

"Moreover, the other people that were also involved, Megan [D.], what possible motive does she have to make up the people she saw involved in this attack? None. She wasn't willing to do it because we had to go find her and get her out of hiding in the back of an apartment. What motive does Christina [D.] have? None. None of these witnesses have any motivation to lie. And moreover, as I mentioned, Gerald [S.] is in hiding. We can't find him. We spent three months looking for him. He doesn't want to come into court. That all goes to show you —

"[Defense counsel:] Objection, states facts not in evidence.

"[Prosecutor:] I believe there was evidence of Gerald [S.] not being able to be found."

"[Defense counsel:] Not the ID.

12

"THE COURT: Any further statement other than they couldn't find him, you cannot consider. Sustained."

Defendant argues the prosecutor's argument impermissibly conveyed facts outside the record by suggesting to the jury that Gerald "had also identified the defendants, but could not be located because he was afraid of gang reprisal." We do not agree with defendant's characterization of the prosecutor's comments. The prosecutor in no way suggested Gerald had identified the defendants as perpetrators. Rather, the prosecutor mentioned the inability to locate Gerald to bolster his claim that fear of gang reprisal had affected multiple witnesses. But the prosecutor made no claim about the substance of what Gerald would say if found. Because the prosecutor did not indicate that Gerald had identified the defendants as perpetrators, we reject defendant's claim of misconduct. [FN. 10]

> [FN. 10]: In his reply brief, defendant argues that because the prosecutor mentioned Gerald S. after discussing two other witnesses who had identified defendant (Christina D. and Megan D.), the prosecutor thereby "implied that [Gerald S.] also identified" him. We disagree.

People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *11-14.

Petitioner argues that the prosecutor committed misconduct by introducing facts not in evidence by arguing during closing summation that a non-testifying witness had identified Petitioner as one of the attackers. (Doc. 1 at 8-11.) The state court reasonably rejected Petitioner's claim. As Respondent contends, the prosecutor did not state that Gerald had identified the Petitioner as the attacker. (Doc. 11 at 20.) Rather, as the Fifth DCA notes, the prosecutor mentioned the inability to locate Gerald to bolster his claim that fear of gang reprisal had affected multiple witnesses. People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *14. Significantly, the prosecutor made no claim about the substance of what Gerald would say if found. Id. The state court determination was not unreasonable, and the claim should be rejected. A fairminded jurist could conclude that the prosecutor's statements during closing argument could not reasonably be seen as "infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. The claim should be denied.

    *c.*    *Analysis – Appealing to the jurors' passion*

In the last reasoned decision, the Fifth DCA denied this claim as follows:

Defendant argues that the prosecutor made improper appeals to the jury's passion about gangs and law and order.

*A. Background*

13

During closing summation, the following occurred:

"[Prosecutor:] This case is a very important case, not just because Jose [A.] who is the victim that he is involved in a lot of bad things before, involved in a lot of gangs before, may not be the most sympathetic victim, involved in drugs. It's not really all about him. It's about whether or not we allow the Norteno street gang to rule our streets. It's about whether or not we allow them —

"[Defense counsel:] Objection, improper argument.

"THE COURT: Overruled.

"[Prosecutor:] It's about whether we allow him to intimidate to stop them from coming forward to report crimes, and we allow them, to let gang crimes go punished. The fact that Jose [A.] was almost killed is a testament of what Nortenos can do and if these individuals are not held accountable it will no doubt occur again.

"We are going to ask you to follow the evidence in this case and we believe based on the evidence, there's no other reasonable explanation that these two gang members attempted to kill Jose [A.] for being a traitor to the gang and being a rat. It's the only thing that makes sense and we ask that you follow that in your verdict.

"Thank you very much."

*B. Analysis*

In *United States v. Weatherspoon* (9th Cir. 2005) 410 F.3d 1142 (*Weatherspoon*), the prosecutor argued to the jury that convicting the defendant "'is gonna make you comfortable knowing there's not convicted felons on the street with loaded handguns, ...'" (*Id.* at p. 1149.) Later, the prosecutor argued that "finding this man guilty is gonna protect other individuals in this community.'" (*Ibid.*) The Ninth Circuit found the argument improper, noting "'[a] prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking.'" (*Ibid.*)

The Attorney General acknowledges that "some of the prosecutor's remarks, regarding holding Norteno members accountable, might be considered objectionable under the standards cited above, ..." However, improper emotional appeals are subject to harmless error review. (E.g., *People v. Simington* (1993) 19 Cal.App.4th 1374, 1379, 23 Cal. Rptr. 2d 769.) We hold that, while some of the prosecutor's comments may have come close to being impertinent, they were not egregious nor prejudicial. While the prosecutor did briefly suggest the jury should be motivated, in part, by a [sic]

While the prosecutor did briefly suggest the jury should be motivated, in part, by a desire to hold the Norteño gang "accountable" or to prevent the gang from "rul[ing] our streets," the prosecutor then acknowledged that the jury should "follow the evidence in this case" and that based on the evidence, defendants were guilty of the charged crime. These latter comments do not vindicate the prior remarks. However, it is highly

14

improbable that the jury ignored its directives regarding case-specific responsibilities in favor of generalized concerns over gang crime.

Several instructions had the same effect of making clear to the jury that their job was to look at the evidence of this case, and not to consider the gang issue in the abstract.

Moreover, the court instructed the jury:

"Unless the evidence proves the defendants guilty beyond a reasonable doubt, they are entitled to an acquittal and you must find them not guilty. [¶] You must decide what the facts are in this case. You must use only the evidence that was presented in this courtroom or a jury view. Evidence is the sworn testimony of witnesses, the evidence admitted into evidence and anything else that I tell you to consider as evidence. [¶] Nothing that the attorneys say is evidence. In their opening statements and closing arguments, the attorneys discuss the case but their remarks are not evidence."

Later, the court instructed the jury:

"You may consider evidence of gang activity only for the limited purpose of deciding whether the defendant acted with the intent, purpose and knowledge that are required to prove the gang-related crimes and enhancements or special allegations charged or the defendant had a motive to commit the crimes charged. [¶] You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts or information relied on by an expert witness in reaching his or her opinion. *You may not consider this evidence for any other purpose.*" (Italics added.)

Contrary to suggestions in defendant's reply brief and in *Weatherspoon*, [FN. 11] California courts assume juries follow instructions. (*People v. Cruz* (2001) 93 Cal.App.4th 69, 73, 113 Cal. Rptr. 2d 86.)

    [FN. 11]: See *Weatherspoon*, *supra*, 410 F.3d at p. 1151.

Given these instructions, the brevity of the prosecutor's arguably objectionable comments, and the other comments by the prosecutor directing the jury to base its decision on the evidence of guilt, we are confident the jury did not base its verdicts on a generalized desire to promote law and order or oppose gangs.

People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *14-18.

    The state court reasonably determined that no prejudice resulted from the alleged comments by the prosecutor referring to the Norteño gang during closing argument. As Respondent contends, the prosecutor's comments regarding Norteños generally were brief and were juxtaposed directly to the prosecutor's discussion of why the jury should not be dissuaded by the prior criminality of the victim. (Doc. 11 at 22.) Additionally, as Respondent and the Fifth DCA noted, the prosecutor also reiterated that the jury should decide the case on the evidence. People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *16; (Doc. 11 at 22.) Further, Respondent notes, the court then instructed the jury on the limited purpose of gang evidence and the jury's duty to decide the case only on the evidence. Id. at 16-

15

17; (Doc. 11 at 22.)

Additionally, Respondent argues that overwhelming evidence supported Petitioner's guilt, including multiple eyewitnesses identifying Petitioner participating in the attack and the victim identifying Petitioner as the leader of the attack. (Doc. 11 at 22.) Respondent also distinguishes a case Petitioner relies largely on, United States v. Weatherspoon, 410 F.3d 1142 (9th Cir. 2005). Respondent notes that the prosecutor in Weatherspoon made multiple comments appealing to societal interests, compared to the single brief remark in this case, and the evidence supporting the verdict in Weatherspoon was also much weaker than the evidence in this case. (Doc. 11 at 23.) Respondent also notes that the case does not constitute clearly established Supreme Court precedent for the purposes of AEDPA. (Doc. 11 at 23.)

Moreover, the Fifth DCA reasonably concluded that given the instructions, the brevity of the prosecutor's arguably objectionable comments, and the other comments by the prosecutor directing the jury to base its decision on the evidence of guilt, "we are confident the jury did not base its verdicts on a generalized desire to promote law and order or oppose gangs." People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *18. A fairminded jurist could conclude that the prosecutor's statements during closing argument could not reasonably be seen as "infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. The claim should be denied.

### 3.   Abuse of Discretion

Petitioner alleges that the trial court abused its discretion by denying his motion for mistrial. (Doc. 1 at 12-14.) This claim was also raised on direct appeal and rejected by the Fifth DCA in the last reasoned decision, as follows:

> Detective Kirk testified before the jury that the last documented law enforcement contact involving defendant (excluding the present case) was when he was contacted as a passenger in a vehicle with Richard Montijo. Kirk later testified Montijo was a "high ranking" Norteño gang member. Kirk also testified that Montijo had attended a previous court hearing (i.e., the preliminary hearing) in the present case.
>
> Outside the presence of the jury, defense counsel argued Montijo's presence at the prior court hearing was not "disclosed" to the defense. Defense counsel said that if he had known about Montijo's presence at court, he would have "checked ... the Court's calendar to see if he had anything involving himself but we were denied that opportunity." The court instructed the jury that the testimony concerning Montijo's

16

1   presence at the prior court hearing was stricken but denied a defense motion for a
    mistrial. Defendant argues the court erred.

2

3   "'[A] mistrial should be granted "only when '"a party's chances of receiving a fair trial
    have been irreparably damaged."'" [Citation.] We review the trial court's ruling for abuse
    of discretion ....' [Citation.]" (*People v. Panah* (2005) 35 Cal.4th 395, 453, 25 Cal. Rptr.
4   3d 672, 107 P.3d 790.)

5   Defendant argues the nondisclosure hindered his ability to counter the inference that he
    was connected to a high-ranking gang leader. But that inference was raised by other
6   competent evidence: Detective Kirk's testimony that law enforcement contacted
    defendant as a passenger in Montijo's vehicle in 2013. While Montijo's presence at a
7   prior court hearing may have incrementally strengthened the inference, we cannot say
    defendant's "'"'"chances of receiving a fair trial [were] irreparably damaged."'"'" (*People
8   v. Panah*, *supra*, 35 Cal.4th at p. 453.)

9   Moreover, the jury was instructed to disregard the testimony concerning Montijo's
    attendance at the prior hearing, and we assume juries follow such instructions. (*People
10  v. Morgain* (2009) 177 Cal.App.4th 454, 469, 99 Cal. Rptr. 3d 301.) Defendant argues
    the "admonition did not cure the problem as the jury should never have learned that
11  Montijo was present." But that is true whenever the court strikes improper testimony. By
    defendant's reasoning, striking testimony and instructing jurors to disregard
12  it *never* avoids prejudice because the jury should never have heard the stricken
    testimony. This is simply not the law in California. (*Ibid.*)

13

14  As a result, we find no prejudicial error.

15  <u>People v. Garcia</u>, 2019 Cal. App. Unpub. LEXIS 466, at *18-20.

16               *a.    Legal Standard and Analysis*

17  Generally, issues of state law are not cognizable on federal habeas. <u>Estelle v. McGuire</u>, 502

18  U.S. 62, 67, (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for

19  errors of state law'") (quoting <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)); <u>Gilmore v. Taylor</u>, 508

20  U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to

21  the level of a constitutional violation, may not be corrected on federal habeas").

22  Petitioner does not allege that the trial court's denying his motion for mistrial violated the U.S.

23  Constitution or a federal law. Instead, Petitioner raises only a state law claim, i.e., an abuse of

24  discretion regarding the application of state laws and regulations, and, generally, issues of state law are

25  not cognizable on federal habeas review. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67 (1991) ("We have stated

26  many times that 'federal habeas corpus relief does not lie for errors of state law.'"), *quoting* <u>Lewis v.

27  Jeffers</u>, 497 U.S. 764, 780 (1990); <u>Gilmore v. Taylor</u>, 508 U.S. 333, 348-349 (1993) (O'Connor, J.,

28  concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation,

may not be corrected on federal habeas").

Even assuming that a federal claim could be stated, it would fail on the merits. The record provides a sufficient basis for the trial court's decision to deny a mistrial. As the Fifth DCA explained, the challenged testimony concerning Montijo's attendance at the prior hearing and the inference that Petitioner was connected to a high-ranking gang leader was raised by other competent evidence: Detective Kirk's testimony that law enforcement contacted Petitioner as a passenger in Montijo's vehicle in 2013. <u>People v. Garcia</u>, 2019 Cal. App. Unpub. LEXIS 466, at *19. Additionally, the jury was instructed to disregard the testimony concerning Montijo's attendance at the prior hearing. <u>Id</u>. at *19-20; (Doc. 11 at 25.) Accordingly, the state court's adjudication of this issue was objectively reasonable. Therefore, the claim should be denied.

4.   <u>Gang Expert Testimony</u>

Petitioner argues that much of the gang expert testimony violated Petitioner's right to confrontation under <u>People v. Sanchez</u>, 63 Cal. 4th 665 (2016). (Doc. 1 at 16-17.) In the last reasoned decision, the Fifth DCA denied the claim as follows:

> Defendant claims that several parts of the gang testimony offered by Detectives Kirk and Tashiro violates *People v. Sanchez* (2016) 63 Cal.4th 665, 204 Cal. Rptr. 3d 102, 374 P.3d 320 (*Sanchez*). In that case, the Supreme Court held that experts cannot "relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id.* at p. 686.)
>
> The Attorney General argues defendant forfeited this claim by presenting it in a perfunctory and conclusory manner. The Attorney General observes that defendant "does not discuss in any detail whether the testimony in question is testimonial" nor does he "discuss in any depth whether the testimony may have stemmed from the testifying officers' personal knowledge; whether the matters testified to were case-specific knowledge as opposed to relating to general background information; or even whether the evidence in question was admitted for its truth."
>
> We agree defendant has forfeited this contention. Moreover, there was significant *admissible* evidence of defendant's gang membership, rendering any *Sanchez* error harmless.
>
> *A. Law*
>
> Claims of error on appeal must be supported by analysis. (See *People v. Barnett* (1998) 17 Cal.4th 1044, 1107, fn. 37, 74 Cal. Rptr. 2d 121, 954 P.2d 384.) Appellate issues may not be raised in a perfunctory or conclusory manner. (See *People v. Griffin* (2004) 33

18

Cal.4th 536, 589, fn. 25, 15 Cal. Rptr. 3d 743, 93 P.3d 344, disapproved on other grounds by *People v. Riccardi* (2012) 54 Cal.4th 758, 824, fn. 32, 144 Cal. Rptr. 3d 84, 281 P.3d 1.) An appellant must do more than raise an issue — they must also sufficiently develop arguments and legal analysis supporting the claim. (See *People v. Aguayo* (2018) 26 Cal.App.5th 714, 726, 237 Cal. Rptr. 3d 338; *People ex rel. Reisig v. Acuna* (2017) 9 Cal.App.5th 1, 32-33, 214 Cal. Rptr. 3d 781.)

*B. Analysis*

Here, defendant's opening brief describes *Sanchez* in one paragraph, then lists nearly *four pages* of testimony ranging on topics from predicate offenses to fellow gang member Richard Montijo. There is virtually no legal analysis whatsoever, until the last four sentences of the section:

"The foregoing matter constitutes inadmissible hearsay. (Evid. Code, §§ 225 and 1200.) It is also testimonial hearsay pursuant to *Crawford v. Washington* (2004) 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177. (*Sanchez, supra*, 63 Cal.4th at 687-698.) These were not matters that the witnesses personally observed, instead, the witnesses relayed information from police investigative reports, gathered for the purpose of prosecution. Therefore, its admission into evidence at Mr. Garcia's trial violated his Sixth Amendment right to confront and cross-examine the witnesses against him."

These blanket, conclusory assertions will not suffice. Under *Sanchez*, gang expert testimony is objectionable if it is case-specific testimonial hearsay. Determining whether evidence is testimonial is a highly particularized, and fact-intensive inquiry. (Cf. *In re Grand Jury Subpoena (Mr. S.)* (1st. Cir. 2011) 662 F.3d 65, 73; *Doe v. United States (In re Grand Jury Subpoena)* (9th. Cir. 2004) 383 F.3d 905, 909-910.) Yet, defendant does not explain how *each* of the purportedly objectionable statements are testimonial. Analyzing various claims of *Sanchez* error arising from different parts of gang experts' testimony simply cannot be done "in bulk." Defendant's opening brief failed to sufficiently develop the argument for our review, and thereby forfeited it.

*C. Any Error was Harmless*

In any event, any *Sanchez* error was harmless in light of the significant admissible evidence of defendant's gang membership, outlined below. [FN. 12]

> [FN. 12]: Defendant also cites certain testimony concerning Richard Montijo, which his own counsel elicited. Pursuant to the doctrine of invited error, defendant cannot be heard to complain of testimony elicited by his own counsel. (See *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1139, 124 Cal. Rptr. 2d 373, 52 P.3d 572; *People v. Williams* (2009) 170 Cal.App.4th 587, 620, 88 Cal. Rptr. 3d 401.) We see nothing prejudicial about any other testimony concerning Montijo.

1. There was Overwhelming, Admissible Evidence of Defendant's Gang Membership

Sergeant Miller testified that he personally made contact with defendant on May 2, 2008. During the contact, defendant said he was a "Northern" gang member. Defendant was with another individual who identified himself as an "East Side Poros" gang member.

Officer Garcia testified that in October 2008, he personally made contact with defendant. Defendant, who was in custody, told Officer Garcia that he was a member of the "West Side Poros" gang.

Officer Sokoloff testified that he personally made contact with defendant on March 18, 2010. Defendant said he was a "Northern" gang member.

Detective Kirk testified defendant has a tattoo with the letters "TC" in one portion of the tattoo, and the letter "N" on the lower-left part of the tattoo. The "N" stands for North Side, Norteño, or Northerners. When asked if "gang culture" permits people who are not Norteño gang members to walk around with an "N" and "TC" tattoo, Detective Kirk replied, "No. As I said earlier, in order for one to get a tattoo, they are required to have done something for the gang."

Because this evidence overwhelmingly demonstrates defendant's gang affiliation, any *Sanchez* error concerning that issue is harmless.

2. There was Admissible Evidence of the Predicate Offenses

Defendant also contends that Detective Kirk's testimony about the two predicate offenses violated *Sanchez*. First, Kirk testified he personally investigated the 2009 predicate offense. Defendant's opening brief incorrectly says Kirk testified he had nothing to do with the investigations "connected to the 'predicate' offenses." In his reply brief, defendant acknowledges Kirk "had some involvement" in the investigation or prosecution of the 2009 offense. However, defendant argues there is no evidence that Kirk had personal knowledge of all the details he gave. But the lack of evidence on the extent of Kirk's first-hand knowledge does not work in defendant's favor. The fact that the "record is not clear enough for this court to conclude which portions of the expert's testimony involved testimonial hearsay" means that defendant "has not demonstrated a violation of the confrontation clause" with respect to that testimony. (*People v. Ochoa* (2017) 7 Cal.App.5th 575, 586, 212 Cal. Rptr. 3d 703.)

Moreover, there was separate evidence establishing the predicate offenses: certified records of the convictions of Josue Sanchez (2009 predicate offense) and Pedro Ayon (2011 predicate offense). As defendant correctly observes, Detective Kirk's testimony went beyond the mere fact that convictions occurred, by describing the events underlying the convictions. But the testimony concerned the conduct of people other than defendant. Certainly, the circumstances of the predicate offenses reflect poorly on the Norteño gang, but we do not find that fact prejudicial.

3. There was Admissible Evidence Defendant was "B-rad"

20

1
2
3

> Defendant argues that Detective Tashiro's testimony that police records indicated defendant was also known as "b-rat" violated Sanchez. However, the fact that defendant was also known as "B-rad" was separately established by Jose's direct testimony. The fact that police records indicated defendant was also known as "b-rat" was cumulative and nonprejudicial.

4   People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *20-25.

5                   a.    Legal Standard

6       The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the

7   accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const.,

8   Amend. VI. The Confrontation Clause bars "admission of testimonial statements of a witness who did

9   not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity

10  for cross-examination." Crawford v. Washington, 541 U.S. 36, 53-54 (2004); Davis v. Washington,

11  547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses' against the accused,

12  i.e., those who 'bear testimony.'" Crawford, 541 U.S. at 51 (citation omitted); Davis, 547 U.S. at 823-

13  24. "'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of

14  establishing or proving some fact." Crawford, 541 U.S. at 51 (citation and some internal punctuation

15  omitted); Davis, 547 U.S. at 824. As the Davis court explained:

16
17
18
19

> [a] critical portion of [Crawford's] holding . . . is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

20  Davis, 547 U.S. at 821 (citation omitted). Thus, nontestimonial statements do not implicate

21  the Confrontation Clause. Giles v. California, 554 U.S. 353, 376 (2008). Moreover, the Confrontation

22  Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of

23  the matter asserted." Crawford, 541 U.S. at 59 n. 9. Additionally, a Confrontation Clause violation is

24  subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). A

25  Confrontation Clause violation is harmless, and does not justify habeas relief, unless it had substantial

26  and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S.

27  619, 623 (1993).

28      "Although Crawford did not define 'testimonial' or 'nontestimonial,' it made clear that

21

the Confrontation Clause was concerned with 'testimony,' which 'is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact,' and noted that '[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not.'" Delgadillo v. Woodford, 527 F.3d 919, 927 (9th Cir.2008) (quoting Crawford, 541 U.S. at 51). Subsequent Supreme Court cases have suggested that a statement is "testimonial" if its declarant knew, or should have known, that its primary utility was to provide evidence of the defendant's unlawful conduct for use in his prosecution or a criminal investigation into past events. See Williams v. Illinois, 567 U.S. 50, 82 (2012) ("The abuses that the Court has identified as prompting the adoption of the Confrontation Clause shared the following two characteristics: (a) they involved out-of-court statements having the primary purpose of accusing a targeted individual of engaging in criminal conduct and (b) they involved formalized statements such as affidavits, depositions, prior testimony, or confessions."); Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009) (opining that a statement is "testimonial" if it was made for an "evidentiary purpose" and "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial") (internal citation and quotation marks omitted).

> b.    Analysis

The state court applied the correct legal standard under the Sixth Amendment by applying Crawford, 541 U.S. 36. Thus, the only question is whether the state court's adjudication is objectively unreasonable.

First, the state court reasonably found that Petitioner failed to conduct a detailed enough analysis to demonstrate a violation of his Confrontation Clause rights. Moreover, there is no clearly established Supreme Court precedent finding a violation of the Confrontation Clause resulting from the admission of an expert's opinion based on hearsay statements. In Williams, a majority of the Supreme Court found that the laboratory results from a nontestifying technician which informed the expert witness were not testimonial in nature and therefore did not violate the Confrontation Clause. Williams, 132 S.Ct. at 2240, 2242-43. Also, a plurality concluded that the laboratory results were admitted for the nonhearsay purpose of "illuminating the expert's thought process" rather than establishing the truth of the matter asserted. Id. at 2240. Because the Supreme Court has provided no

clear answer to this question, "it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008).

Even if there was error, the state court reasonably concluded that the admission of the gang expert's testimony did not have a "substantial and injurious effect or influence on the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). As Respondent states, there was overwhelming evidence that established the elements of the gang enhancement even when excluding any evidence that was not clearly based on witnesses' personal knowledge. (Doc. 11 at 29.) Therefore, the Petitioner is not entitled to habeas relief because the state court decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. And even if error occurred, it could have had no effect on the jury's verdict. The claim should be denied.

5.    Admission of Evidence Claim and Derivative Ineffective Assistance of Counsel Claim

Petitioner claims that he was prejudiced by the admission of his responses to jail booking records at trial. (Doc. 1 at 19.) He also claims that counsel was ineffective for failing to object to the admission of the booking records. (Doc. 1 at 19.) Petitioner raised these claims on direct appeal. In the last reasoned decision, the Fifth DCA denied the claims as follows:

Defendant contends the court erred in admitting his responses to jail classification questions. We find the issue forfeited for failing to object below.

*A. Background*

Detective Kirk testified that the Tulare County Sheriff's Office has inmates complete a form, which includes the question: "'Do you associate with any street or prison gangs?'" Garcia and Perez wrote, "North or Northern or something to that effect on that form during the booking process" on "several occasions." The defense did not object to this testimony.

*B. Law and Analysis*

Defendant claims Detective Kirk's testimony runs afoul of *People v. Elizalde* (2015) 61 Cal.4th 523, 189 Cal. Rptr. 3d 518, 351 P.3d 1010 (*Elizalde*), which held that an arrestee's un-*Mirandized* answers to gang affiliation questions during the booking process may not be admitted in the prosecution's case-in-chief.

The Attorney General argues defendant forfeited this claim by failing to object below. We agree.

A judgment will not be reversed on grounds that evidence has been erroneously admitted

23

unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so *stated as to make clear the specific ground of the objection or motion*; ..." (Evid. Code, § 353, subd. (a), italics added.) Specificity is required to enable the court to make an informed ruling on the motion or objection and to enable the party proffering the evidence to cure the defect in the evidence. [Citations.] *Miranda*-based claims [FN. 13] are governed by this rule. "'The general rule is that a defendant must make a specific objection on *Miranda* grounds at the trial level in order to raise a *Miranda* claim on appeal.' [Citation.]" (*People v. Mattson* (1990) 50 Cal.3d 826, 853-854, 268 Cal. Rptr. 802, 789 P.2d 983.)

> [FN. 13]: *Miranda v. Arizona* (1966) 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (*Miranda*)

Defendant argues his claim is not forfeited because this area of law was unsettled at the time of trial. [FN. 14] But *Elizalde* was decided in June 2015, and trial in the present matter began in February 2016.

> [FN. 14]: In the alternative, defendant suggests the failure to object constituted ineffective assistance of counsel. When the record on appeal does not show why counsel failed to act, the judgment must be affirmed "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation, ..." (*People v. Ledesma* (1987) 43 Cal.3d 171, 218, 233 Cal. Rptr. 404, 729 P.2d 839.) Here, we cannot say there "simply could be no satisfactory explanation" for declining to object on *Miranda* grounds. One possibility is that, on those prior dates, Garcia had been *Mirandized* when initially arrested, and that advisement was sufficiently close in time and context so as to cover the subsequent booking interviews. (See generally *People v. Schenk* (1972) 24 Cal.App.3d 233, 101 Cal. Rptr. 75.) Because plausible, satisfactory explanations *could* exist, defendant's claim cannot prevail on direct appeal.

Defendant counters that while *Elizalde* had been decided at the time of trial, *Sanchez* had not. Defendant argues that under pre-*Sanchez* authority, Detective Kirk's testimony concerning the booking question responses was admissible hearsay. But the fact that *Sanchez* had not been decided does not impact defendant's *Miranda* claim. *Sanchez* concerns testimonial hearsay and the constitutional right to confrontation. *Elizalde* concerns the right to *Miranda* warnings before booking question responses are used in the prosecution's case-in-chief. The fact that *Sanchez* may have altered the analysis of any hearsay or confrontation clause objection does not impact the analysis of a *Miranda* objection under *Elizalde*.

People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *25-27.

> a.    *Legal Standard and Analysis – Admission of Evidence*

This claim is not cognizable on federal habeas review because the admissibility of evidence is a matter of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (state evidentiary ruling cannot provide ground for federal habeas relief unless the admission of evidence violated due process). In Holley v. Yarborough, the Ninth Circuit stated:

> Under AEDPA, even clearly erroneous admissions of evidence that render a trial fundamentally unfair may not permit the grant of federal habeas corpus relief if not

1

2

> forbidden by "clearly established Federal law," as laid out by the Supreme Court. 28
> U.S.C. § 2254(d). In cases where the Supreme Court has not adequately addressed a
> claim, this court cannot use its own precedent to find a state court ruling unreasonable.
> Musladin, 549 U.S. at 77, 127 S.Ct. 649.

3

4

> The Supreme Court has made very few rulings regarding the admission of evidence as
> a violation of due process. Although the Court has been clear that a writ should be issued
> when constitutional errors have rendered the trial fundamentally unfair, see Williams,
> 529 U.S. at 375, 120 S.Ct. 1495, it has not yet made a clear ruling that admission of
> irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient
> to warrant issuance of the writ. Absent such "clearly established Federal law," we cannot
> conclude that the state court's ruling was an "unreasonable application." Musladin, 549
> U.S. at 77, 127 S.Ct. 649. Under the strict standards of AEDPA, we are therefore without
> power to issue the writ . . . .

5

6

7

8

9   Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009); see Moses v. Payne, 555 F.3d 742, 760

10  (9th Cir. 2008) (holding that trial court did not abuse its discretion in excluding expert testimony

11  "[b]ecause the Supreme Court's precedents do not establish a principle for evaluating discretionary

12  decisions to exclude the kind of evidence at issue here"); see also Brown v. Horell, 644 F.3d 969, 983

13  (9th Cir. 2011) ("Between the issuance of Moses and the present, the Supreme Court has not decided

14  any case either 'squarely address[ing]' the discretionary exclusion of evidence and the right to present

15  a complete defense or 'establish[ing] a controlling legal standard' for evaluating such conclusions.

16  Brown, therefore, cannot – as the petitioner in Moses could not – show that the state appellate court's

17  ruling was either contrary to or an unreasonable application of clearly established Supreme Court

18  precedent."). Since there is no clearly established Supreme Court precedent governing a trial court's

19  discretionary decision to admit evidence as a violation of due process, habeas relief is foreclosed. Id.

20  Additionally, as Respondent contends, Petitioner's admission of evidence claim is procedurally barred

21  in federal court. (Doc. 11 at 31-32.) The state court reasonably found the admission of evidence claim

22  forfeited for lack of objection. People v. Garcia, 2019 Cal. App. Unpub. LEXIS 466, at *26-27. The

23  claim should be rejected.

24          b.      Legal Standard and Analysis – Ineffective Assistance of Counsel

25          Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth

26  Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of

27  counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S.

28  668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle,

792 F.2d 846, 847 (9th Cir.1986); <u>see also</u> <u>Penson v. Ohio</u>, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the <u>Strickland</u> standard does not apply and prejudice is presumed; the implication is that <u>Strickland</u> does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things.  First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. <u>Strickland</u>, 466 U.S. at 687-88.  Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed at trial. <u>Id</u>. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. <u>Id</u>. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable.  <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general <u>Strickland</u> standard for ineffective assistance.  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009).  Accordingly, the question "is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold."  <u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007); <u>Knowles</u>, 556 U.S. at 123.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003).  Moreover, because the <u>Strickland</u> standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  <u>See</u> <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

Petitioner argues that counsel was ineffective for failing to object to the admission of the booking records. (Doc. 1 at 19.) Based on the record, the choices made by counsel appear reasonable. The Fifth DCA noted that it could not say that there simply could be no satisfactory explanation for

declining to object on <u>Miranda</u> grounds. <u>People v. Garcia</u>, 2019 Cal. App. Unpub. LEXIS 466, at *27 n.14. The state court concluded that because plausible, satisfactory explanations could exist, Petitioner's claim cannot prevail on direct appeal. <u>Id</u>. As Respondent asserts, Petitioner fails to demonstrate that the state court's denial of his ineffective assistance of counsel claim was unreasonable. (Doc. 11 at 32.) Petitioner failed to show that counsel erred or that the error resulted in any prejudice. The claim should be rejected.

## IV.    RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty days after being served with a copy of this Findings and Recommendation, Petitioner may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:    **October 13, 2020**              **/s/ Jennifer L. Thurston**
                                         UNITED STATES MAGISTRATE JUDGE